# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| BRANDON CALLIER, | § |
| | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| SUMMIT HORIZON FINANCIAL SERVICES, | § |
| LLC, a Georgia Limited Liability Company and | § |
| MORRIS LOBE | § |
| | § |
| Defendants. | § |
| | § |



1:21 cv 131

## PLAINTIFF'S ORIGINAL COMPLAINT

## PARTIES

1. The Plaintiff is BRANDON CALLIER, a natural person, and was present in Texas for all calls, in this case in El Paso County.

2. Defendant SUMMIT HORIZON FINANCIAL SERVICES, LLC ("Summit") is a Georgia Limited Liability Company and can be served via registered agent INCORP Services, Inc. at 9040 Roswell Road, Suite 500, Atlanta, Georgia, 30350.

3. Defendant MORISS LOBE ("Lobe") is a natural person, resident of Georgia, Owner and Chief Executive Officer of Summit Horizon Financial Services, LLC and can be served at 503 E. Green Street, Bainbridge, Georgia 39819.

## JURISDICTION AND VENUE

4. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

1

5. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendants because they are citizens of the Middle District of Georgia and own and operate businesses in the Middle District of Georgia.

6. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because defendants reside in the Middle District of Georgia.

## THE TELEPHONE CONSUMER PROTECTION

## ACT OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of §

2

227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20. Plaintiff's number has been on the national Do Not Call registry for 17 years.

21. On February 4, 2021, Plaintiff filed Complaint **EP-21-CV-0023** in the Western District of Texas alleging 24 TCPA violating phone calls against Defendant's Lobe and Summit.

22. Defendant Summit was served the Complaint on February 12, 2021.

23. Defendant Summit continued to call Plaintiff and made another 31 solicitation phone calls to Plaintiff after they had been served with Plaintiff's Complaint and Summons.

24. On April 20, 2021, and again on April 26, 2021, Defendant Lobe filed a motion to dismiss on behalf of Summit Horizon Financial Services, LLC in the Western District of Texas in an attempt to represent Defendant Summit in Federal Court.  The Court struck these motions as Defendant Lobe is not a licensed attorney.

25. Plaintiff continued to receive phone calls from Defendants even after the Defendants were served with Complaint EP-21-CV-0023.

26. Plaintiff received at least 32 additional phone calls from April 2, 2021, to March 25, 2021.  31 of these calls came after Plaintiff had served Defendant Summit with the first Complaint.

27. On one such call the representative and/or employee of Defendant Summit said:

    "I have an income contingent repayment plan.  You have pay $500 the first three months and then after that your payment will become $634.  Under this income contingent repayment plan, if you pay $634 dollars.....you have a balance of 164,000 right now. The plan is for $634 for the next 199 months.  After that the balance will be forgiven completely by the department of education.  So just the first 3 months it will be $500 and then after that your payment will become $634 for 196 months.  And then after that you are done.  No more payments after that sir.  And that includes all your loans.  Whatever you have right now."

28. Defendants are representing all the payments are being applied to the Plaintiff's student loan balances and never indicates the $500 payments would go to Defendant Summit for document preparation.

29. Defendants' representatives would make misleading and inaccurate statements including asserting affiliation with the Federal Government, misrepresenting where payments would be

applied, who they were calling on behalf of.

30. Defendant Lobe was aware of the phone calls and had the ability to stop the phone calls and did nothing to stop the phone calls.

31. Defendant Lobe is the only officer of Defendant Summit on file with the Secretary of State of Georgia.  Mr. Lobe organized and formed Summit Horizon Services, LLC in 2015.  Mr. Lobe filed annual renewal paperwork for Summit Horizon Services, LLC in 2016, 2017, 2018, 2019, 2020 and 2021.

32. Defendant Summit Horizon Financial Services, LLC is a closely owned corporation owned, controlled, and dominated by Defendant Lobe.

33. The Plaintiff has received at least 32 calls and texts over six weeks to his cell phone, 915-245-4374 without consent and not related to an emergency purpose, soliciting the "Student Loan Forgiveness" products and services of Defendant Summit.

34. The Plaintiff did not want or need student loan forgiveness.  This was clearly indicated to the Defendants when Plaintiff sued Defendants in Case EP-21-CV-0023 on February 4, 2021.

35. Defendant's agent asked Plaintiff personal questions such as his date of birth to gather information in an attempt to access Plaintiff's federal account at Studentaid.gov.

36. Defendant's representative reset Plaintiff's Studentaid.gov password without permission by causing a verification code to be sent via text message to Plaintiff's cell phone and asking Plaintiff to read the verification code to the Defendant's agent.

37. The Defendant's representative used this verification code to access the Plaintiff's Studentaid.gov account without Plaintiff's knowledge or permission.

38. Defendants did not tell Plaintiff the reason for the verification code being sent to Plaintiff or why they needed Plaintiff to tell them the verification code.

39. Defendants accessed Plaintiff's studentaid.gov account and viewed his personal information without permission in an attempt to trick Plaintiff into hiring Defendants.

40. The Defendant's representative then provided Plaintiff with the username and password she had just changed on Plaintiff's account.

41. On March 24, 2021, Plaintiff enrolled with Defendant Summit in order to receive a contract in order to have concrete proof it was the Defendants who were harassing Plaintiff even after Plaintiff had already sued and served the Defendants six weeks prior.

42. Defendants made the following solicitation calls and texts to Plaintiff AFTER Plaintiff had filed suit against the Defendants.

| Call Phone Number | Name on Caller ID | Date | Time |
|---|---|---|---|
| 760-378-8490 | UNKNOWN NAME | 2/4/2021 | 9:54 AM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:11 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:14 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:15 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:16 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:16 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:16 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:24 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:46 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:47 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:47 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 5:48 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 6:04 PM |
| 760-378-8490 | UNKNOWN NAME | 2/12/2021 | 6:06 PM |
| 760-378-8490 | UNKNOWN NAME | 2/15/2021 | 9:13 AM |
| 760-378-8490 | UNKNOWN NAME | 2/15/2021 | 9:17 AM |
| 760-378-8490 | UNKNOWN NAME | 2/15/2021 | 9:18 AM |
| 760-378-8490 | UNKNOWN NAME | 2/15/2021 | 9:23 AM |
| 760-378-8490 | UNKNOWN NAME | 2/15/2021 | 9:25 AM |
| 760-378-8490 | UNKNOWN NAME | 2/15/2021 | 9:27 AM |
| 760-378-8490 | UNKNOWN NAME | 2/15/2021 | 9:29 AM |
| 760-378-8490 | UNKNOWN NAME | 2/15/2021 | 1:20 PM |
| 760-378-8490 | UNKNOWN NAME | 2/15/2021 | 3:20 PM |
| 915-742-4255 | UNKNOWN NAME | 2/16/2021 | 4:37 PM |

| 760-378-8490 | UNKNOWN NAME | 2/16/2021 | 4:40 PM |
| 760-378-8490 | UNKNOWN NAME | 2/16/2021 | 4:40 PM |
| PRIVATE NUMBER | PRIVATE NUMBER | 2/17/2021 | 4:48 PM |
| PRIVATE NUMBER | PRIVATE NUMBER | 2/17/2021 | 4:53 PM |
| 760-378-8490 | UNKNOWN NAME | 3/24/2021 | 7:03 PM |
| 760-378-8490 | UNKNOWN NAME | 3/25/2021 | 9:39 AM |
| 760-378-8490 | UNKNOWN NAME | 3/25/2021 | 12:15 PM |
| 760-378-8490 | UNKNOWN NAME | 3/25/2021 | 12:16 PM |

## CORPORATE OFFICERS ACCOUNTABLE UNDER THE TCPA

43. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

44. Defendant Lobe was aware of the unwanted nature of the calls and did nothing to stop the calls. Defendant Lobe was authorizing the conduct when he was aware of the unwanted calls and did nothing to stop the calls. Defendant Lobe authorized at least 31 calls and texts to Plaintiff after becoming aware of the Complaint filed in the Western District of Texas.

45. Defendant Lobe responded to the Complaint filed in the Western District of Texas and cannot plausibly claim he was not aware of the unwanted nature of the calls.

46. Defendant Lobe was the only person with the ability to stop the calls and did nothing.

47. Defendant Lobe benefits economically from the phone calls as the calls generate revenue for his business his is the professed "Owner" of as indicated on the Motion to Dismiss he filed in

the Western District of Texas (Dkt. 6).

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

48. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

49. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

50. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

51. Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

52. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

- Reduced Device Storage space

- Reduced data plan usage

- Invasion of privacy

- Lost time tending to text messages

- Decreased cell phone battery life

- More frequent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone

- Reduced battery usage

- Annoyance

- Frustration

- Anger

- Harassment

**PLAINTIFF'S CELL PHONE NUMBER IS A RESIDENTIAL NUMBER**

53. The calls were to the Plaintiff's cellular phone 915-245-4374, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

54.    In Strange v ABC Co. the Court noted:

"Some courts who have evaluated similar TCPA claims have dismissed them after concluding that Section 227(c)(5) does not encompass calls to cell phones, while other courts have required a plaintiff to present evidence establishing that he used his cell phone for residential purposes.  See Strange v. Doe #1, No. 19-1096, 2020 U.S. Dist. LEXIS 8476, 2020 WL 2476545, *3 (W.D. La. May 12, 2020) (collecting cases).  The Federal Communications Commission, which is the agency responsible for the TCPA's implementation, has observed this disconnect between the treatment of residential phones and has stated:

[W]e believe it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections.  As indicated above, Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls.  In addition, although Congress expressed [*10] concern with residential privacy, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers.  Therefore, we conclude, that wireless subscribers may participate in the national do-not-call list.  As a practical matter, since determining whether any particular

10

wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14039 (2003) (footnotes omitted).

From this, the Court finds persuasive authority that plaintiffs, like Strange, who register their cell phones with do-not-call registries are presumed to be residential subscribers. However, the Court finds that Strange is still required to put forth evidence supporting this presumption, as he is seeking enforcement of section 227(c)(5) against the Defendants. See Cunningham [*11] v McDonald, No. 3:15-CV-215, 2018 U.S, Dist. LEXIS 201403, 2018 WL 6737418, *2 (M.D. Tenn. Nov. 5, 2018) ("While a person utilizing a cellular phone may fall within the definition of a 'residential telephone subscriber' under the act, Plaintiff's pleadings allege only that calls were made to his cellular phone and he has pled no facts or offered evidence sufficient for the court to draw the conclusion that he has stated a cause of action under (c)(5)"); Stevens-Bratton v. TruGreen, Inc., 437 F. Supp. 3d 648, 655 (W.D. Tenn. Feb. 4, 2020) ("Courts have interpreted the 'residential telephone subscriber' element to require proof the number called was used for 'residential purposes,' ") Cunningham v. Rapid Capital Funding, LLC/RCF, No. 3:16-CV-2629, 2017 U.S. Dist. LEXIS 136951, 2017 WL 3574451, *3 (M.D. Tenn. July 27, 2017) ("While this Court has suggested that calls to a cell phone may be construed as calls to a residential telephone, the plaintiff must plead facts showing the cell phone is used for *residential purposes*." (emphasis in original)). Thus, Strange cannot prevail under Section 227(c)(5) without sufficient proof that he used his cell phone for residential purposes." *Strange v. ABC Co.*, No. 19-1361, 2021 U.S. Dist. LEXIS 38882 *; 2021 WL 798870.

11

55.     47 C.F.R. § 64.2305(b) defines a business subscriber as a subscriber to a telephone exchange service for businesses.

56.     47 C.F.R. § 64.2305(d) defines a residential subscriber as a subscriber to a telephone exchange that is not a business subscriber.

57.     Plaintiff's cell phone is not a business subscriber and is therefore a residential subscriber.

58.     The way a telephone service is delivered, e.g., wireless cell phone or landline, does not determine whether a phone is a residential or business phone.  The purpose and use of the phone is what determines whether a phone is residential.  A cell phone and landline can both be used for residential and business purposes.

## I.  FIRST CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1.     Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

        a.     a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

        b.     training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2); [3] and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

      c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

      3.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

      4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

      5.      Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## II. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

      A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

      B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

      C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

---

[4] *See id.* at 425 − 26 (codifying a June 26, 2003 FCC order).

     D.     An award of $1500 per call in statutory damages arising from the TCPA

intentional violations jointly and severally against the corporation and individual for 32 calls.

     E.     An award to Mr. Callier of damages, as allowed by law under the TCPA;

     F.     An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law

and equity

     G.     Such further relief as the Court deems necessary, just, and proper.


July 14, 2021                    Respectfully Submitted,

Brandon Callier
Plaintiff Pro-se
6336 Franklin Trail
El Paso, TX 79912
Callier74@gmail.com